SOUTHERN PACIFIC COMPANY v. E. REDDING & SON ET AL.

Delivered December 16, 1897.

1. **Interstate Commerce Law—Shipment from Foreign Port—Rates.**

Competition in ocean transportation is to be taken into consideration in determining whether or not the rate for the carriage of goods imported on a through bill of lading from a foreign shipping port, from the port of entry in the United States to the point of destination, violates the Interstate Commerce Act; and the fact that the proportion of the through rate allowed for the carriage from the port of entry to the destination may be less than the rate scheduled for freight originating

at the same place and carried to the same destination, does not necessarily render the lesser rate unlawful.

### 2.   Same—Unlawful Contract for Freight—Burden of Proof.

A railroad company which seeks to release itself from its agreement to deliver goods for a specified freight, on the ground that the contract is illegal because the rate specified is less than that fixed by the Interstate Commerce Commission, has the burden of proving that the contract is necessarily unlawful, and not simply that it may be so.

### 3.   Assignment of Error—Too General—Damages.

In an action to recover damages for the detention and conversion of goods belonging to plaintiffs, an assignment of error that the damage sustained by plaintiffs does not equal the amount of the judgment is too general for consideration on appeal, where the amount allowed was considerably less than that sued for, and it does not appear what items were allowed and what were disallowed.

### 4.   Railroad Company—Wrongful Detention—Charge for Storage.

A railroad company which wrongfully detains goods shipped over its road is not entitled to charge storage for the goods while so detained.

Appeal from Galveston.   Tried below before Hon. W. H. Stewart.

*Mott & Armstrong,* for appellant.—There were no circumstances or conditions that could have authorized the making of a less rate than 33 cents per hundredweight for the transportation from New Orleans to Galveston.   Harwell v. Railway, 1 I. C. C. Rep., 236, 248, 249; Board of Trade v. Railway, 6 Id., 1, 16; Board of Trade v. Railway, 4 Id., 104, 111; James & Abbott v. Railway, 5 Id., 612, 618, 624, 625; Rayworth v. Railway, Id., 234, 237; Merchants' Union v. Railway, Id., 478, 496; Cotton Exchange v. Railway, 3 Id., 547, 565; Behlmer v. Railway, 6 Id., 257, 264; Rice v. Railway, 4 Id., 228, 249, 250; King v. Railway, Id., 251, 260, 261; Buggy Co. v. Railway, Id., 744; Rice v. Railway, 5 Id., 230.

*Joseph H. Wilson,* for appellees.—The Southern Pacific Company is bound by its agreement.   Morrison v. Banks, 2 Wall., 728; U. S. Sup. v. Peck, 102 U. S., 64.

WILLIAMS, Associate Justice.—This action was brought by the appellees against appellant, the Southern Pacific Company, and the Gulf, Colorado & Santa Fe Railway Company, to recover damages for the detention and conversion of goods belonging to appellees.   The facts, as stated in the petition and shown by the evidence, were that appellees made a contract with the Southern Pacific Company and the West India and Pacific Steamship Company for the shipment of 150 boxes of tin plates from Swansea, Wales, to Galveston, for a through rate of 30 shillings per ton. The evidence satisfactorily shows that the Southern Pacific Company contracted for the carriage of the freight from Swansea to Galveston at that rate.   A bill of lading was issued and signed by agents of the steamship company, which stipulated for the carriage of the goods from Swansea to New Orleans by steamship and from New Orleans to Galveston by railroad or other conveyance.   The only freight rate stated in the bill of lading was the through rate of 30 shillings per ton, and the bill of lading

stipulated that the receiving parties named were severally but not jointly bound.  It was agreed between the two companies that the charge for the ocean transportation should be 10 shillings per ton, and the remainder, 20 shillings per ton, was to be the charge of the railroad companies.

The goods were shipped by steamship to New Orleans, but only 149 boxes were there delivered to the Southern Pacific Company.  That company paid to the steamship company the charges upon the tin, including the portion of the freight due for ocean transportation of 150 boxes. The 149 boxes were forwarded by the Southern Pacific Company to Galveston, the portion of the carriage from Houston to Galveston being effected through the agency of the Gulf, Colorado & Santa Fe Railway Company.  The latter company, acting upon the instruction of the Southern Pacific Company, demanded of appellees, as charges upon the goods, a sum which included 33 cents per hundredweight as a charge for carriage from New Orleans to Galveston, and refused to deliver the goods except upon condition that appellees pay such charges.

Appellees, having offered to pay all sums due according to the through rate stipulated in the contract of shipment, and this being refused, brought suit for the value of the goods and damages resulting from their detention.  Thereafter further negotiations ensued, in which the Southern Pacific Company made different reductions in the amount of its charges, and finally offered to accept the amount due according to the bill of lading.  Appellees expressed their willingness to accede to this proposition, provided the costs of suit and damages which had accrued were paid by the Southern Pacific Company, but this was not agreed to.

The Southern Pacific Company, as its defense, alleged that 33 cents per hundredweight was its regular rate for the transportation of freight from New Orleans to Galveston, regula_ly scheduled and filed with the Interstate Commission, and published in accordance with the Act of Congress  regulating interstate commerce, and asserted that it had not contracted, and could not lawfully contract, for any less rate.  The Gulf, Colorado & Santa Fe Railway Company, in addition to a general denial, alleged that it was not a party to the shipping contract, and alleged that it had acted simply as the agent of the Southern Pacific Company, and asked that, in case judgment was rendered against it, it have judgment for the like amount over against the Southern Pacific Company.

The sum sued for by the plaintiffs amounted to $1518.06.  The court, trying the case without a jury, rendered judgment in favor of plaintiffs against both defendants for the sum of $1206.82, and in favor of the Gulf, Colorado & Santa Fe Railway Company against the Southern Pacific Company for any sum which the former might have to pay upon the judgment.  The Southern Pacific Company alone appeals.

The principal contention of appellant is that the contract relied on by appellees is in violation of the Act of Congress regulating interstate commerce.  The schedule filed with the Interstate Commerce Commission, showing the rates of charges for transportation of goods between New Orleans and Galveston, is assumed, in the presentation of that case, to have

special reference to shipments which are merely from one of those points to the other, and not to goods imported from abroad, through the port of New Orleans, under a through bill of lading for the carriage from the point of origin to the final destination.

Under the decisions of the Supreme Court of the United States, the scheduled rates applying to inland transportation is not necessarily conclusive upon the carrier in fixing through rates upon imported goods. Interstate Commerce Commission, 162 U. S., 197. Under that decision, in determining whether or not the rate for the carriage of goods which have been imported on a through bill of lading from a foreign shipping point, from the port of entry in the United States to the point of destination, is a violation of the act, competition in ocean transportation is to be taken into consideration; and the fact that the proportion of the through rate allowed for the carriage from the port of entry to the destination may be less than the rate scheduled for freight originating at the same place and carried to the same destination does not necessarily render the lesser rate unlawful.

In the present case, the facts are not so developed as to force upon the court the conclusion that the contract in question is really violative of the interstate commerce law. Circumstances may have existed to make it legitimate for the contracting parties to stipulate for such a through rate. The case does not occupy such an attitude as to require, in order to uphold the rights of the parties under the contract, an affirmative finding by the court that there were circumstances and conditions which authorized the contract. Appellant entered into the contract, and after its error in demanding an excessive sum as the condition of the delivery of the freight was pointed out, acceded to the demand of appellees for the recognition of the contract rate. Never, so far as the record shows, until after suit was brought, had appellant denied its right to make the contract which it is shown to have made. By making the contract it necessarily affirmed the right to do so, and certainly, if it can release itself from its undertaking by proof that the contract was illegal, the burden is upon it to furnish such proof and to show, not simply that the contract may have been unlawful, but that it was necessarily so. In other words, it must exclude the existence of any circumstances or conditions which would have made the contract legitimate. This, we think, the evidence in this case has failed to do, and this view of the matter makes it unnecessary for us to determine what would have been the consequence upon the rights of the parties had the proof demonstrated that the contract was unlawful.

Had such proof been furnished, the question would still have remained, whether or not appellant, having received appellees' goods, and having them in its possession, could withhold them, in order to force the payment of a sum which appellees had not agreed to pay, upon the ground that the contract was illegal. This question we do not think it proper to decide, because, as we have seen, the evidence does not render it necessary to hold that the contract was an unlawful one. We think the court was

correct in holding that the property of appellees was wrongfully detained, and that they were entitled to recover damages.

The assignment of error which questions the finding of the court as to the amount of damages does not sufficiently present any question for our determination. The plaintiffs' claim consisted of various items, and there are no findings to show upon what basis the court rendered its judgment. The amount allowed is less than that sued for by more than $300, and we can no see what items were allowed and what disallowed by the court. In this state of the case, the assignment that the damage sustained by plaintiffs does not equal the amount of the judgment is too general.

From the holding that the detention of the goods was wrongful, it follows that the court did not err in refusing to allow the defendant's claim for storage.

The assignment that the court did not allow defendant for the freight money actually due under the contract is not borne out by the record, for we can not see that it was not allowed.

What we have said virtually disposes of all the assignments of error.

*Affirmed.*

Writ of error refused.